UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

FIRST STATE INSURANCE COMPANY, ET AL.,

                  Plaintiffs,

      - against -

UNITED JEWISH APPEAL - FEDERATION OF JEWISH PHILANTHROPIES OF NEW YORK INC. ET AL.,

                  Defendants.

25-cv-1418 (JGK)

MEMORANDUM OPINION AND ORDER

---

JOHN G. KOELTL, District Judge:

The plaintiffs/counterclaim defendants are First State Insurance Company, New England Insurance Company, Twin City Fire Insurance Company, and Hartford Accident and Indemnity Company (together, "the Hartford"). The Hartford issued primary and excess insurance policies to one of the defendants, United Jewish Appeal – Federation of Jewish Philanthropies of New York, Inc. ("UJA") between 1973 and 1992. Beginning in 2020, several alleged survivors of childhood sexual abuse sued both UJA and the other defendant, The Shorefront YM-YWHA of Brighton-Manhattan Beach, Inc. ("Shorefront"), alleging sexual abuse by coaches, employees, volunteers, and donors in the 1970s and 1980s.

The Hartford brought this action seeking declaratory judgments regarding the scope of coverage for the defendants under certain insurance policies in connection with four of the child-abuse lawsuits. Shorefront has raised several counterclaims. The

Hartford now moves to dismiss all but one of those counter-claims.

## I.

### A.

First State Insurance Company issued a general liability policy to UJA for the period between April 15, 1983, and April 15, 1986 (the "Primary Policy"). Compl. ¶ 14, ECF No. 1. The Primary Policy provided that "[t]he company will pay on be-half of the Insured all sums which the Insured shall become legally obligated to pay as damages because of" bodily injury, as further defined by the policy. Id. ¶ 19. The Policy identi-fies the "Named Insured" as:

> Federation of Jewish Philanthropies of New York, Unit-ed Jewish Appeal of Greater New York, Inc., United Jewish Appeal Federation of Jewish Philanthropies Cam-paign, Inc., Joint Purchasing Corp. and FOJP Service Corporation and all of their affiliated and/or associ-ated and/or subsidiary societies and agencies and their affiliated and/or associated and/or subsidiary organizations as are presently constituted and all those who may hereafter become affiliated or associat-ed with UJA-FOJP of Jewish Philanthropies of New York, United Jewish Appeal of Greater New York, Inc., United Jewish Appeal Federation of Jewish Philanthropies Cam-paign, Inc., Joint Purchasing Corp. and FOJP Service Corporation or any of their affiliates, and including the Jewish Communal Fund of New York and Northeast In-surance Company, Ltd. (Bermuda), and F.F.H. Insurance Company Ltd. (Bermuda).

Id. ¶ 21.[1] The Primary Policy defined "Insured" to include the Named Insured as well as:

> Any partner, official, director, trustee, member of a board, student, faculty member, employee, regularly employed consultant, volunteer, all while acting within the scope of their duties as defined by institutional officer of the named insured and foster parents appointed by the named insured but only in respect to liability arising out of their activities as foster parents.
>
> The designation "volunteer" includes all persons who by prior written agreement or institutional practice or regulation provide services for which no compensation is received, and coverage hereunder, as respects such volunteers and for part-time employed professionals, is to be considered as the only valid coverage in force.
>
> \*\*\*
>
> Professional corporations as respects occurrences involving an employee of such professional corporation who is also an employee or volunteer of the named insured and is acting within the scope of his duties on behalf of or as authorized by the named insured. This definition does not extend to include any other employees of the professional corporation.

Id. ¶ 22 (omission in original) (emphasis omitted). The Primary Policy was canceled on April 15, 1985. Id. ¶ 15. In addition to the Primary Policy, several of the plaintiffs issued excess general liability policies to UJA between 1973 and 1992 (the "Excess Policies," and, together with the Primary Policy, the "Hartford Policies"). Id. ¶ 16.

---

[1] Unless otherwise noted, this Memorandum Opinion and Order omits all internal alterations, citations, footnotes, and quotation marks in quoted text.

3

**B.**

In 2019, New York enacted the New York State Child Victims Act ("CVA"), N.Y. C.P.L.R. § 214-g. The CVA established a so-called reviver window, which allowed survivors of sexual abuse to file otherwise time-barred civil lawsuits between August 14, 2019, and August 14, 2021.

Beginning in 2020, several alleged survivors sued both UJA and Shorefront under the CVA, alleging sexual abuse by coaches, employees, volunteers, and donors in the 1970s and 1980s. Compl. ¶ 30. Four of those lawsuits involve allegations of abuse while the Primary Policy and Excess Policies were in effect (the "Underlying Actions"). Id. ¶¶ 32-37.

Both UJA and Shorefront have sought defense and indemnification from the Hartford with respect to the Underlying Actions. Id. ¶ 40. The plaintiffs agreed to contribute to UJA's defense, although they reserved their rights to withdraw that defense, to disclaim coverage, and to seek reimbursement from other carriers, or UJA itself, for any money spent on claims that were later found not to qualify for coverage under the Hartford Policies. Id. ¶ 41. By contrast, the plaintiffs advised Shorefront that it was not a named insured under the Hartford Policies. Id. ¶ 43. The plaintiffs requested that Shorefront provide documentation establishing its status as an insured under the Hartford Policies. Id.

4

## C.

The plaintiffs brought this lawsuit in February 2025 to seek declaratory judgments as to the parties' rights and obligations under the Hartford Policies. In April 2025, the defendants answered the complaint and asserted eight counterclaims. ECF No. 17. In May 2025, UJA filed an amended answer, which did not contain counterclaims. ECF No. 27. UJA confirmed on July 14, 2025, that it is not pursuing any counterclaims against the plaintiffs. ECF No. 34.

The plaintiffs/counterclaim defendants now move to dismiss all but one of Shorefront's counterclaims. The plaintiffs/counterclaim defendants also move to strike three paragraphs in Shorefront's answer that refer to alleged settlement discussions.

## II.

A motion to dismiss a counterclaim "is evaluated using the same standard as a motion to dismiss a complaint." A.V.E.L.A., Inc. v. Est. of Marilyn Monroe, LLC, 131 F. Supp. 3d 196, 203 (S.D.N.Y. 2015). Accordingly, in deciding a motion to dismiss a counterclaim pursuant to Rule 12(b)(6), the allegations in the counterclaim are accepted as true, and all reasonable inferences must be drawn in the pleader's favor. See McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007). The Court's function on a motion to dismiss is "not to weigh the evidence

5

that might be presented at a trial but merely to determine whether the [claim or counterclaim] is legally sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir. 1985). A counterclaim will survive a Rule 12(b)(6) motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the [pleader] pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.

## III.

Shorefront brings eight counterclaims against the Hartford: one for a declaratory judgment that Shorefront is a Named Insured (Count I), Counterclaims ¶¶ 59-63, ECF No. 17; one for a declaratory judgment that the Hartford is obligated to defend Shorefront (Count II), id. ¶¶ 64-69; one for a declaratory judgment that the Hartford is obligated to indemnify Shorefront with respect to the Underlying Actions (Count III), id. ¶¶ 70-75; one for reimbursement of the defense costs that Shorefront has incurred in the Underlying Actions (Count IV), id. ¶¶ 76-80; one for breach of the Hartford Policies (Count V), id. ¶¶ 81-88; one for breach of the Hartford's contractual obligation to indemnify Shorefront (Count VI), id. ¶¶ 89-96; one for violating the duty of good faith and fair dealing (Count VII), id. ¶ 97-108; and

6

one for violating New York General Business Law § 349 (Count VIII), id. ¶¶ 109-26.

Shorefront has withdrawn its second and sixth counterclaims in response to the current motion. See Affirmation Opp'n to Pls.' Mot. to Dismiss 2, ECF No. 44. The Hartford moves to dismiss Counts I, III, IV, VII, and VIII. Shorefront does not move to dismiss Count V.

**A.**

First, Shorefront seeks declaratory relief in Counts I and III against the Hartford regarding Shorefront's status as an insured and its entitlement to indemnification under the Hartford Policies. The Hartford moves to dismiss these claims on the ground that Shorefront invoked New York's declaratory-judgment procedure instead of the federal Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201, and because these claims effectively duplicate Shorefront's breach-of-contract claim, Count V, which the Hartford has not moved to dismiss.

The Hartford is correct that federal courts "cannot grant relief under N.Y. C.P.L.R. § 3001, the provision in New York State's civil procedure code that permits a state trial court to render a declaratory judgment having the effect of a final judgment." Gustavia Home, LLC v. Rutty, No. 16-cv-2823, 2018 WL 2198742, at *5 (E.D.N.Y. May 14, 2018). Shorefront responds by arguing that the Court should convert its counterclaims in

7

Counts I and III "into claims seeking declaratory relief under" the DJA. Mem. Opp'n Mot. to Dismiss Counterclaims ("Opp'n") 8, ECF No. 45. Either way, these counts fail because Shorefront is not entitled to declaratory relief.

"[D]istrict courts possess discretion in determining whether and when to entertain an action under the [DJA], even when the suit otherwise satisfies subject matter jurisdictional prerequisites." Wilton v. Seven Falls Co., 515 U.S. 277, 282 (1995). In deciding whether to entertain an action for declaratory judgment, district courts consider: "(1) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved; and (2) whether a judgment would finalize the controversy and offer relief from uncertainty." Duane Reade, Inc. v. St. Paul Fire & Marine Ins., 411 F.3d 384, 389 (2d Cir. 2005).

As for Count I, declaring whether Shorefront is a named insured under the Hartford Policies would not "serve a useful purpose in clarifying or settling the legal issues involved" in this dispute because the Court will necessarily have to decide that question in adjudicating Shorefront's breach-of-contract claim in Count V. Id. Indeed, Shorefront could not succeed on its breach-of-contract claim unless it establishes that it is an insured. See Nat'l Cas. Co. v. Vigilant Ins., 466 F. Supp. 2d 533, 542 (S.D.N.Y. 2006) ("[W]here the insurance contract does

8

not name, describe, or otherwise refer to the entity or individual seeking the benefit thereof as an insured, there is no obligation to defend or indemnify."). Because "[c]ourts generally reject a DJA claim when other claims in the suit will resolve the same issues," City of Perry v. Procter & Gamble Co., 188 F. Supp. 3d 276, 286 (S.D.N.Y. 2016), Count I is dismissed as duplicative of Count V.

As for Count III, "it is clear that a declaration on the duty to indemnify is inappropriate at this time." Travelers Prop. Cas. Co. of Am. v. Harleysville Worcester Ins., 685 F. Supp. 3d 187, 216 (S.D.N.Y. 2023). "[A] declaration would in no way finalize the controversy or settle the underlying legal issues, as liability would still need to be resolved in the Underlying Action[s]." Id. "[C]ourts regularly require the existence of liability before exercising DJA discretion over indemnity issues." Lafarge Canada Inc. v. Am. Home Assurance Co., No. 15-cv-8957, 2018 WL 1634135, at *5 (S.D.N.Y. Mar. 31, 2018) (collecting cases). Shorefront's claim for a declaratory judgment as to its entitlement to indemnification under the Hartford Policies is therefore dismissed "without prejudice as to its renewal after liability has been established in" the Underlying Actions. Harleysville Worcester, 685 F. Supp. 3d at 216.

9

**B.**

In Count IV, Shorefront seeks reimbursement of the costs it has spent on its defense in the Underlying Actions. Shorefront contends that it incurred those costs because the Hartford wrongfully failed to fulfill its duty to defend Shorefront under the Hartford Policies.

This claim fails because it, too, is encompassed by Shorefront's breach-of-contract claim. What Shorefront styles a reimbursement claim is simply another way of arguing that Shorefront is entitled to damages from the Hartford's alleged breach of the Hartford Policies. Shorefront resists this conclusion by asserting that its "fourth counterclaim seeks repayment of past defense costs, while the fifth counterclaim seeks past and future damages." Opp'n 9. But if the Hartford in fact breached the Hartford Policies by failing to defend Shorefront, then the "past defense costs" are exactly what Shorefront could recover. "[W]here an insurer breaches the duty to defend, ... it must pay damages in the form of attorneys' fees and litigation expenses reasonably incurred by the insured in defending the underlying action." Beazley Ins. v. ACE Am. Ins., 197 F. Supp. 3d 616, 632-33 (S.D.N.Y. 2016).

Shorefront has failed to explain adequately how the damages it seeks to recover under Count IV would not be wholly encompassed by the damages it seeks to recover under Count V.

10

Shorefront's reimbursement claim (Count IV) is therefore **dismissed.**

C.

In Count VII, Shorefront claims that the Hartford breached the implied covenant of good faith and fair dealing. According to Shorefront, the Hartford breached the implied covenant by, among other things, "[t]iming its coverage denial ... in such a way as to inflict maximum damage[] and hardship." Counterclaims ¶ 103(e).

As with Counts I and IV, this claim duplicates Shorefront's breach-of-contract claim. Under New York law, the "parties to an express contract are bound by an implied duty of good faith, but breach of that duty is merely a breach of the underlying contract." Harris v. Provident Life & Accident Ins., 310 F.3d 73, 80 (2d Cir. 2002). Thus, there is no "separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled." Id. at 81.

In this case, Shorefront's implied-covenant claim, as pleaded, "does not state a distinct cause of action based on a separate set of facts and so is not independent from" its underlying claim that the Hartford breached the Hartford Policies. Simon v. Unum Grp., No. 07-cv-11426, 2008 WL 2477471, at *4 (S.D.N.Y. June 19, 2008); see also Woodhams v. Allstate Fire &

11

Cas. Co., 748 F. Supp. 2d 211, 223 (S.D.N.Y. 2010) ("[A]n alleged breach of the implied covenant of good faith and fair dealing is part of a general breach of contract claim; in other words, the allegations in Count VI should have been pled under Count II."), aff'd, 453 F. App'x 108 (2d Cir. 2012). The only factual allegation arguably distinguishing Shorefront's implied-covenant claim from its breach claim is the allegation that the Hartford deliberately timed its coverage decision to maximize Shorefront's injury. But that allegation is both conclusory and insufficiently distinct from the alleged breach of the underlying Hartford Policies to support an independent cause of action. Shorefront's implied-covenant claim (Count VII) is therefore **dismissed.**

**D.**

Finally, in Count VIII, Shorefront claims that the Hartford violated New York General Business Law § 349 by, "among other things, failing to have and implement reasonable standards to effectuate prompt, fair, and equitable settlements of claims where liability is reasonably clear" and "by failing and refusing to provide insurance coverage where required." Counterclaims ¶ 114.

To state a claim under Section 349, a plaintiff must show "(1) acts or practices that are consumer oriented, (2) that such acts or practices are deceptive or misleading in a material

12

way[,] and (3) that [the] plaintiff has been injured by reason of those acts." DePasquale v. Allstate Ins., 179 F. Supp. 2d 51, 58 (E.D.N.Y 2002). The consumer-oriented element requires a plaintiff to show that the challenged practice has a "broad impact on consumers at large; private contract disputes unique to the parties would not fall within the ambit of the statute." N.Y. Univ. v. Continental Ins., 662 N.E.2d 763, 770 (N.Y. 1995).

Shorefront has failed to allege adequately anything more than a standard private contractual dispute. "Several courts have considered whether disputes between policy holders and insurance companies concerning the scope of coverage can amount to conduct falling within Section 349," and "[a]lmost uniformly, those courts have held that such disputes are nothing more than private contractual disputes that lack the consumer impact necessary to state a claim pursuant to Section 349." DePasquale, 179 F. Supp. 2d at 62 (collecting cases).

Shorefront insists that the Hartford's conduct was consumer-oriented "because [the Hartford's] conduct here, if repeated with other insureds, may have a broad impact on consumers at large." Opp'n 13. However, Shorefront has not alleged any facts suggesting that to be the case. To state a viable Section 349 claim, Shorefront must allege more than that the Hartford's conduct could have an impact on consumers at large if it were

13

routine. Shorefront's Section 349 claim (Count VIII) is therefore **dismissed.**

## IV.

The Hartford separately moves to strike paragraphs 32, 33 and 103(e) of Shorefront's counterclaims because they reference purportedly confidential settlement communications between the parties.

Federal Rule of Civil Procedure 12(f) provides that "the court may strike from a pleading ... any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "However, motions to strike under Rule 12(f) are generally disfavored, and in deciding whether to strike an allegation for impertinence or immateriality, 'it is settled that the motion will be denied, unless it can be shown that no evidence in support of the allegation would be admissible.'" Mitchell v. Frattini, No. 22-cv-2352, 2022 WL 17157027, at *4 (S.D.N.Y. Nov. 22, 2022) (quoting Lipsky v. Commonwealth United Corp., 551 F.2d 887, 893 (2d Cir. 1976)). "Moreover, the movant should show that [it] will be prejudiced if the attacked allegations are left in the pleadings." I.B. Trading, Inc. v. Tripoint Glob. Equities, LLC, 280 F. Supp. 3d 524, 546 (S.D.N.Y. Nov. 15, 2017); see also VNB Realty, Inc. v. Bank of Am. Corp., No. 11-cv-6805, 2013 WL 5179197, at *3 (S.D.N.Y. Sept. 16, 2013) ("[M]otions to strike under Rule 12(f) should be denied unless the challenged

14

allegations have no possible relation or logical connection to the subject matter of the controversy and may cause some form of significant prejudice to one or more of the parties to the action.").

According to the Hartford, Shorefront's references to mediation efforts must be stricken because any evidence supporting those allegations would be inadmissible under Federal Rule of Evidence 408. But this argument is unpersuasive. Rule 408 provides that evidence of settlement talks is inadmissible "either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction." Fed. R. Evid. 408(a). Shorefront, however, does not appear to include its allegations for either purpose. Indeed, the Hartford acknowledges that the challenged allegations have "no bearing on the merits of" Shorefront's claims. Pls.' Mem. Supp. Mot. to Dismiss and to Strike 22, ECF No. 41.

Nor has the Hartford established that the allegations it seeks to strike will prejudice its case on the merits. At most, the Hartford asserts in conclusory fashion that "[a]llowing such a disclosure would ... prejudice Plaintiffs' ability to enter productive settlement discussions in future actions." Reply Mem. Supp. Mot. to Dismiss and to Strike 9, ECF No. 49. But the Hartford never elaborates on why that would be the case.

15

Accordingly, the Hartford's motion to strike is **denied without prejudice**.

## V.

The Court has considered all the arguments raised by the parties. If any argument was not specifically addressed, it is either moot or without merit. For the foregoing reasons, the Hartford's motion to dismiss various counterclaims is **granted**. Counts II and VI are withdrawn. Counts I, III, IV, VII, and VIII are **dismissed without prejudice**. The Hartford's motion to strike is **denied without prejudice**.

The Clerk is directed to close ECF No. 39.

**SO ORDERED.**

Dated:     New York, New York
           January 7, 2026

_____
John G. Koeltl
United States District Judge

16